UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-80446-Cannon/McCabe

AVIS CHAPMAN-REESE,

Plaintiff,

v.

GENESIS EDUCATIONAL SERVICES
OF FLORIDA, INC., a Florida Profit Corporation,
d/b/a PALM BEACH ACADEMY OF
HEALTH & BEAUTY,

Defendant.
_______________________________________/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Plaintiff's Motion for Default Judgment (DE 13), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 16). For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART** and that Default Judgment be entered in the amount of **$104,109.94**.

## I. BACKGROUND

This is an employment discrimination case brought by the former Campus Director (Plaintiff) against a defunct beauty school (Defendant). On November 11, 2025, Defendant filed a notice of voluntary corporate dissolution with the Florida Secretary of State. The Court takes judicial notice, pursuant to Fed. R. Evid. 201(b)(2), of the docket and filings in the related case of *Williams v. Genesis Educational Services of Florida, Inc.*, Case No. 26-cv-80445-Cannon/McCabe, which document Defendant's voluntary dissolution. *See Williams v. Genesis Educational Services of Florida, Inc.*, Case No. 26-cv-80445, DE 9 ¶ 2, DE 18 at 1.

On April 21, 2026, Plaintiff filed a seven-count Complaint against Defendant, alleging various theories of race and color discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act of 1992 ("FCRA"), and the Florida Private Whistleblower Act ("FPWA"). (DE 1).[1] On April 24, 2026, Plaintiff effected service of process on Defendant's registered agent pursuant to Florida law. (DE 4). In response, Defendant failed to answer, appear, or otherwise respond to the Complaint. As a result, Plaintiff moved for entry of a Clerk's default, which the Clerk entered on May 22, 2026. (DE 5, DE 6).

This motion for default judgment followed on July 2, 2026. (DE 13). Defendant has not responded to this motion, moved to set aside the default, or otherwise appeared in this action.

## II. LEGAL STANDARD

A default judgment may be entered against a defendant who has failed to plead or otherwise defend against a lawsuit. Fed. R. Civ. P. 55(b)(2). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (cleaned up). Before entering a default judgment, a court must determine that a "sufficient basis" exists for the judgment, which finding is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). Also, a court may not enter a final default judgment awarding monetary damages without an evidentiary hearing "unless the amount claimed is a liquidated sum or one

[1] The Complaint alleged the following counts: Count I (Race and Color Discrimination in Violation of Title VII); Count II (Race and Color Discrimination in Violation of the FCRA); Count III (Retaliation in Violation of Title VII); Count IV (Retaliation in Violation of the FCRA); Count V (Hostile Work Environment in Violation of Title VII); Count VI (Hostile Work Environment in Violation of the FCRA); and Count VII (Retaliation in Violation of the FPWA). (DE 1).

capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir.1985) (cleaned up).

## III. DISCUSSION

The Court will first address the sufficiency of the Complaint, followed by damages, followed by attorneys' fees and costs.

### A. Sufficiency of the Complaint

As stated, the Complaint alleges seven counts for relief under various theories of Title VII, FCRA, and FPWA liability. Given that all counts allege overlapping and duplicative claims for damages, the Court need not address the sufficiency of all seven counts. Instead, the Court will limit its analysis solely to Count V, which authorizes all of the damages that Plaintiff seeks. *See Bedabox LLC v. Toy Overlord, Inc.*, No. 24-61821-CIV, 2026 WL 1648989, at *5 (S.D. Fla. June 8, 2026) ("Because this Court finds that Plaintiff is entitled to default judgment as to Count I for Breach of Contract, this Court need not address Plaintiff's alternative claims for relief."); *Wesco Ins. Co. v. Repasky*, No. 19-81734-CIV, 2020 WL 3129145, at *3 (S.D. Fla. June 12, 2020) ("Because the Court will enter a final default judgment as to both Counts I and II—and because those counts entitle Wesco to all the relief it seeks—the Court need not address Wesco's arguments about Counts III (an alternative theory of liability) or IV (an alternative form of relief).").

Count V alleges that Defendant created a racially hostile work environment that led to Plaintiff's forced resignation in violation of Title VII. (DE 1 ¶¶ 106–123). The Eleventh Circuit has described the elements of a Title VII hostile work environment claim as follows:

> To succeed on [his/her] claim against [name of defendant], [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
>
> First: [Name of plaintiff]'s supervisor harassed [him/her] because of [his/her] [race/religion/sex/national origin];

Second: The harassment created a hostile work environment for [name of plaintiff]; and

Third: [Name of plaintiff] suffered damages because of the hostile work environment.

…

A "hostile work environment" created by harassment because of [race/religion/sex/national origin] exists if:

(a) [name of plaintiff] was subjected to offensive acts or statements about [race/religion/sex/national origin] – even if they were not specifically directed at [him/her];

(b) [name of plaintiff] did not welcome the offensive acts or statements, which means that [name of plaintiff] did not directly or indirectly invite or solicit them by [his/her] own acts or statements;

(c) the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of [name of plaintiff]'s employment;

(d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and

(e) [name of plaintiff] believed that the offensive acts or statements materially altered the terms or conditions of [his/her] employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms or conditions of [name of plaintiff]'s employment, you should consider all the circumstances, including:

(a) how often the discriminatory conduct occurred;

(b) its severity;

(c) whether it was physically or psychologically threatening or humiliating; and

(d) whether it unreasonably interfered with [name of plaintiff]'s work performance.

*See* Eleventh Circuit Pattern Jury Instructions (Civil) § 4.6.

The Court has reviewed the allegations of Count V and finds them sufficient to state a plausible claim for relief under this legal theory. The allegations include the following:

- Plaintiff is an African American woman. (DE 1 ¶ 8).
- Defendant is qualified employer for purpose of Title VII. (DE 1 ¶ 9).
- Plaintiff was qualified to perform her duties as the Campus Director. (DE 1 ¶ 12).
- Plaintiff's supervisor, who was White, repeatedly made racist comments, including (1) complaining that the school had "so many blacks" working there (DE 1 ¶ 20); (2) criticizing a Black job employee for displaying "ghetto" behavior (DE 1 ¶ 23); (3) telling a Black student "all of you people look the same anyway" (DE 1 ¶ 32); (4) calling a Black student a "house nigger" (DE 1 ¶ 45); and (5) calling Black students "ghetto" and saying they "make Black people look bad" (DE 1 ¶ 52).
- Plaintiff repeatedly complained to upper management about her supervisor's behavior, but upper management took no action. (DE 1 ¶ 18).
- Plaintiff repeatedly complained to her supervisor about workplace misbehavior of other employees, but the supervisor took no action. (DE 1 ¶¶ 29-30, 33).
- Defendant engaged in a pattern of mistreating other non-White employees. (DE 1 ¶ 55).
- By November 18, 2024, the situation became so hostile that Plaintiff was forced to submit her letter of resignation, with an effective date of December 6, 2024. (DE 1 ¶ 54).
- On November 28, 2024, Defendant terminated Plaintiff prior to the effective date of her resignation. (DE 1 ¶ 56).

The Court finds the above allegations sufficient to state a plausible claim for a racially hostile work environment and forced resignation in violation of Title VII. The Court therefore finds a "sufficient basis" for entry of a default judgment on Count V for purposes of *Surtain*, 789 F.3d at 1245. Given this conclusion, the Court need not address the sufficiency of the remaining counts of the Complaint.

**B. Damages**

Plaintiff seeks $138,461.42 in damages, consisting of $118,461.42 in back pay and $20,000 in emotional distress damages. (DE 13 at 7-8). The Court will address each component in turn.

**1. Back Pay**

Plaintiff seeks $118,461.42 in back pay. (DE 13 at 7). Title VII authorizes back pay to remedy intentional employment discrimination. 42 U.S.C. § 2000e-5(g)(1). The purpose of back pay is to make plaintiffs whole for the damages caused by unlawful discrimination. *Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656 (11th Cir. 1984). Back pay means the difference between the actual wages earned by a plaintiff and the wages he or she would have earned but for the unlawful discrimination. *Akouri v. Florida Dept. of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005). Back pay normally runs from the date of the adverse employment action up to the date of the final judgment. *See Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir.1985) (reversing where district court ordered back pay up to the date of bench trial rather than date of final judgment four months later).

The rule is slightly different where, as here, a defendant goes out of business prior to the date of final judgment. To award back pay in such circumstances would make a plaintiff better than whole since it would compensate the plaintiff during a time when he or she would not have had a job with defendant, for reasons unrelated to discrimination. For this reason, courts generally

recognize that back pay ceases when a defendant goes out of business. *See Howes v. Keokuk Hosp. Inv., LLC*, No. 3:07-CV-00051, 2008 WL 11333890, at *3 (S.D. Iowa Jan. 28, 2008) (awarding back pay up to date of employer's corporate dissolution); *Grame v. Osborn Transp., Inc.*, No. 99-4120-DES, 2001 WL 951357, at *2 (D. Kan. July 19, 2001) ("[W]here an employer goes out of business and terminates all employees, plaintiff's eligibility for back pay ceases."); *E.E.O.C. v. Regency Architectural Metals Corp.*, 896 F. Supp. 260, 271 (D. Conn. 1995) (stating that "the cut off point for recovering back pay is ... when the shop where [plaintiff] was working went out of business").

Applying these standards here, the Court finds that Plaintiff should receive a back pay award running from the date of her termination up to the date Defendant filed its corporate dissolution. Plaintiff has submitted a sworn declaration attesting that Defendant terminated her employment on November 28, 2024. (DE 13-1 at 9). At the time of termination, Plaintiff earned $1,538.46 per week with an annual salary of $80,000. (DE 13-1 at 9). Plaintiff remained unemployed from the date of her termination up to the date Defendant filed its corporate dissolution on November 11, 2025—a period of approximately fifty weeks. This results in a back pay award of **$76,923.00** (50 weeks × $1,538.46 per week = $76,923.00).

**2. Emotional-Distress Damages**

Plaintiff seeks $20,000 for emotional distress. (DE 13 at 8). Title VII allows aggrieved plaintiffs to recover compensatory damages for emotional pain, suffering, inconvenience, and mental anguish. 42 U.S.C. § 1981a(b). A factfinder has broad discretion in awarding such damages under Title VII, provided they are "proven by competent, sufficient evidence." *Akouri*, 408 F.3d at 1344-45.

Applying these standards here, the Court agrees that Plaintiff should be awarded $20,000 for emotional distress damages. Plaintiff has submitted evidence showing she was forced to go to work each day worried about continued harassment and discrimination. (DE 13-1 ¶ 50). Plaintiff felt targeted and afraid to return to work on a daily basis. (DE 13-1 ¶ 51). Following her termination, Plaintiff experienced additional emotional harm from the stress and anxiety of living without an income and searching for new employment. (DE 13-1 ¶¶ 52-53).

In the Court's view, Plaintiff provided competent, sufficient evidence to support this award. *See Carlisle v. Nat'l Com. Servs., Inc.*, 722 F. App'x 864, 870 (11th Cir. 2018) (affirming the entry of a default judgment without a hearing where the plaintiff had filed an affidavit concerning his emotional distress damages); *Garcia v. Unit Dose Servs., LLC*, No. 23-61352-CIV, 2023 WL 6962827, at *4–5 (S.D. Fla. Oct. 2, 2023) (relying on the plaintiff's affidavit to recommend a $100,000 emotional-distress award on default judgment), *R. & R. adopted*, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023). The Court also notes that this award falls within the range of emotional distress damages awarded in other employment discrimination cases in this judicial district.[2] For

[2] *See, e.g.*, *Joss v. United Home Mortgage Ctr. of Florida, Inc.*, No. 09-60411-CIV, 2011 WL 13272300, at *3–4 (S.D. Fla. Jan. 26, 2011), *R. & R. adopted*, 2011 WL 13272301 (S.D. Fla. Mar. 7, 2011) (awarding $100,000 for emotional distress when the plaintiff testified that she feared men, did not want to be alone with a man, did not want to go out alone at night, suffered from crying spells, became less social and outgoing, and distanced herself from others); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1287-88, 1290-92 (S.D. Fla. 2007) (awarding the statutory cap of $300,000 for emotional pain and mental anguish where evidence showed the plaintiff suffered a relapse in his depression, experienced anxiety and distress, felt "sick" and "destroyed," became nauseous, cried uncontrollably, had difficulty sleeping, was "unable to enjoy life's everyday pleasures," had strained relationships with his wife and daughter, and was socially isolated); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1228-30 (S.D. Fla. 2002) (awarding $75,000 for emotional pain and mental anguish when the plaintiff testified that she had trouble sleeping and waking, lost her appetite, was no longer her usual easy-going self, and felt sick, angry, furious, upset, and anxious, and when there was evidence of medical conditions such as a jaw condition and gastrointestinal problems but a weak causal link between these conditions and the Title VII violation).

all of these reasons, the Court finds that Plaintiff should be awarded **$20,000** for emotional distress damages.

**C. Attorneys' Fees and Costs**

Plaintiff next seeks $7,186.94 in attorneys' fees and costs. (DE 13 at 9). Courts analyze requests for attorneys' fees in two steps: entitlement and amount. As to entitlement, Title VII allows attorneys' fees and costs to the prevailing party at the Court's discretion. 42 U.S.C. § 2000e-5(k). Based on the default entered here, the Court finds Plaintiff to be the prevailing party in this action for purposes of attorneys' fees and costs.

As to amount, courts generally calculate reasonable attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). This number, referred to as the "lodestar," carries a strong presumption of reasonableness, but may be adjusted by the court. *Id.* A fee applicant bears the burden to prove reasonableness, which normally includes "supplying the court with specific and detailed evidence." *Norman v. Housing Auth. of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).

Here, Plaintiff's counsel provided the Court with billing invoices along with background information regarding the timekeepers who worked on the case. (DE 13-2, DE 13-3, 13-4). The first step in calculating the lodestar is to determine reasonable hourly rates. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation." *Van De Velde NV v. Felder*, No. 15-cv-24096, 2017 WL 8895345, at *4 (S.D. Fla. May 25, 2017), *R. & R. adopted*, 2017 WL 8895340 (S.D. Fla. June 16, 2017). A court may act as its own expert in making this determination.

*See Norman*, 836 F. 2d at 1303. The Court finds the hourly rates requested here ($400 for Attorney GS, $300 for Attorney AG, and $175 for Paralegal Dilma) to be reasonable.

The next step in calculating the lodestar is to determine the reasonable number of hours expended on the case. In making this determination, courts generally look to factors such as (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019) (noting that the *Johnson* factors are typically subsumed within the lodestar analysis). Once again, courts may act as their own expert in making this determination. *Norman*, 836 F.2d at 1303.

The Court reviewed the time records here as well as the *Johnson* factors. Based on this review, the Court finds the total number of hours expended to be reasonable. The Court therefore awards the full amount requested of $6,697.54 in attorneys' fees.

Finally, Plaintiff requests costs of $405.00 for a filing fee and $84.40 for a service fee, for total costs of $489.40. (DE 13-2 ¶ 2; DE 13-3 at 3). The Court finds these costs to be reasonable. The Court therefore finds that Plaintiff should be awarded $489.40 in costs, resulting in a combined award of **$7,186.94** in attorneys' fees and costs.

**D. Conclusion**

In sum, the Court awards the following amounts:

| | |
|---|---|
| Back Pay: | $76,923.00 |
| Emotional Distress: | $20,000.00 |
| Attorneys' Fees & Costs: | $7,186.94 |
| Total: | **$104,109.94** |

## IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** as follows:

1. Plaintiff's Motion for Default Judgment (DE 13) should be **GRANTED IN PART.**

2. The District Judge should enter a Default Judgment in favor of Plaintiff and against Defendant in the total amount of **$104,109.94,** with post-judgment interest accruing at the statutory rate set forth in 28 U.S.C. § 1961.

3. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

4. **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 10th day of September 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE